* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and *Page 2 
upon reconsideration, the Full Commission affirms in part and modifies in part the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff is a citizen and resident of Wake County, North Carolina.
2. Plaintiff was working as an employee of James Lloyd d/b/a Forest Hills Service Center in Durham, North Carolina on May 30, 2006.
3. On May 30, 2006, James Lloyd d/b/a Forest Hills Service Center in Durham, North Carolina was a business subject to the North Carolina Workers' Compensation Act.
4. For purposes of this claim, plaintiff and defendants agree that plaintiff's average weekly wage on May 30, 2006 was $334.26, yielding a compensation rate of $222.95.
5. On May 30, 2006, plaintiff was injured by an accident which arose out of and was sustained in the course of his employment with Forest Hills Service Center, to wit: the first phalange of his left second finger was partially amputated when it became caught in an automobile engine's timing belt.
6. Plaintiff and defendants agree that the May 30, 2006 injury was compensable under the North Carolina Workers' Compensation Act.
7. On May 30, 2006, James Lloyd d/b/a Forest Hills Service Center did not have workers' compensation insurance in effect as required by the North Carolina General Statutes, although Mr. Lloyd contends that he believed in good faith that he did.
8. There is a dispute between James Lloyd d/b/a Forest Hills Service Center and *Page 3 
Westport Insurance Company regarding whether or not there was coverage in effect at the time of plaintiff's accident or whether Westport and its insured wrongfully failed to provide such coverage.
9. Plaintiff was unable to work from his May 30, 2006 injury until June 13, 2006. Plaintiff returned to work on June 13, 2006 and worked a normal schedule until June 20, 2006, when his injured finger ruptured due to an infection and required amputation shortly thereafter. Plaintiff did not return to work at Forest Hills Service Center.
10. Plaintiff was released to light duty work on July 20, 2006, but the parties disagree whether light duty work was available for plaintiff.
11. Plaintiff is entitled to some amount of temporary total disability benefits.
12. Plaintiff could not attend scheduled physical therapy because defendants did not pay for it. Plaintiff was unable to continue treatment until he went on his own to Dr. Terry Messer at Wake Orthopaedics on December 6, 2006, where he was found to be at maximum medical improvement and was released to return to work.
13. As a result of the May 30, 2006 accident, plaintiff sustained an injury to his left second finger and was assigned a permanent partial disability rating of 60% by Dr. Messer, resulting in a total amount of $5,350.80 for permanent partial disability. At the time of the Deputy Commissioner's hearing, this amount had not been paid to plaintiff.
14. As a result of his injury, plaintiff incurred medical bills for treatment that was reasonably necessary to effect a cure and provide relief for his injury from the following health care providers, which at the time of the Deputy Commissioner's hearing remained unpaid and owed by defendants:
 a. Durham Emergency Phys.: $615.00 *Page 4 
 b. Durham Anesthesia Assoc.: $1,456.00
 c. Durham Radiology Assoc.: $42.00
 d. Durham Regional Hospital: $20,762.29
 e. Duke Hospital: $411.00
 f. Duke PDC: $651.00
 g. Chapel Hill Orthopedics: $3,198.00
 h. Raleigh Orthopaedics: $1,313.00
 i. Wake Orthopaedics: $229.00
 j. Lab Corp: $76.00
15. The following were admitted as Stipulated Exhibits at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit No. 1 — Duke Hospital records and bills.
 b. Stipulated Exhibit No. 2 — Duke Private Diagnostic bill.
 c. Stipulated Exhibit No. 3 — Durham Regional Hospital records and bills.
 d. Stipulated Exhibit No. 4 — Durham Anesthesia bill.
 e. Stipulated Exhibit No. 5 — Durham Radiology Assoc. bill.
 f. Stipulated Exhibit No. 6 — Raleigh Orthopaedics' records and bills.
 g. Stipulated Exhibit No. 7 — Wake Orthopaedics' records and bills.
 h. Stipulated Exhibit No. 8 — Chapel Hill Orthopaedics' records and bills.
 i. Stipulated Exhibit No. 9 — Lab Corp bill.
 j. Stipulated Exhibit No. 10 — Durham Emergency Physicians bill.
 k. Stipulated Exhibit No. 11 — Plaintiff's federal income tax documentation.
 l. Stipulated Exhibit No. 12 — ESC Records. *Page 5 
 m. Stipulated Exhibit No. 13 — NCIC Coverage screen.
16. This issues before the Full Commission are what benefits plaintiff is entitled to receive and what penalties are appropriate to be assessed against defendants.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As a result of his admittedly compensable May 30, 2006 injury by accident, plaintiff was unable to work from May 31, 2006 to June 12, 2006. Plaintiff returned to work on June 13, 2006 and continued working until June 20, 2006, when his injured finger ruptured due to an infection and required amputation shortly thereafter.
2. Dr. Andrew Jones of Chapel Hill Orthopedic Surgery and Sports Medicine cleared plaintiff for light duty on July 20, 2006; however, plaintiff never returned to work for defendant-employer after June 20, 2006.
3. Plaintiff did not provide defendant-employer with his release to return-to-work notes and did not keep defendant-employer informed regarding his work status until he tried to return to work in December 2006.
4. Defendant-employer James Lloyd thought plaintiff abandoned his job when he took his tools from the work place, so Mr. Lloyd hired another mechanic to take plaintiff's place on September 14, 2006.
5. Vickie Couch worked for defendant-employer and testified that light duty work was available to plaintiff. However, defendant-employer did not offer any evidence of an actual *Page 6 
job offer made to plaintiff or what kind of light duty work was available and whether it was full-time work.
6. Plaintiff's health care treatment was cut off due to defendants' failure to pay for it and plaintiff's inability to pay for it due to lack of income, which resulted in a longer period of time that plaintiff was out of work. Plaintiff was not found to be at maximum medical improvement and did not feel comfortable returning to work with his injury until he was able to see Dr. Terry Messer of Raleigh Orthopaedic Rehabilitation Specialists on December 6, 2006.
7. As a result of the May 30, 2006 accident, Dr. Messer assigned plaintiff a 60% permanent partial disability rating to his finger, resulting in a total amount of $5,350.80 for permanent partial disability. At the time of the Deputy Commissioner's hearing, this amount had not been paid to plaintiff.
8. After Dr. Messer cleared plaintiff to return to work, in December 2006 plaintiff returned to defendant-employer where he learned that his former position had already been filled by another mechanic and there was no work available for him.
9. Plaintiff was out of work since June 20, 2006. Plaintiff sought employment and ultimately got a job at Laser Recharge Center on February 21, 2007. Plaintiff received $209.00 per week in unemployment benefits for six weeks.
10. Defendant-employer filed a Form 19 in this matter, but did not file a Form 60, 61, or 63 admitting or denying the claim as required by the Act, did not pay plaintiff temporary total disability benefits, and did not provide medical treatment for plaintiff.
11. According to Employment Security Commission records, defendant-employer had three or more employees beginning April 1, 2002 through December 31, 2006. The evidence of record shows that defendant-employer did not have workers' compensation coverage on May 30, *Page 7 
2006, the date plaintiff was injured. Defendant-employer obtained workers' compensation insurance on June 6, 2006. Thus, the Commission finds that defendant-employer was subject to the Act and operated without workers' compensation insurance from May 30, 2006 until June 6, 2006.
12. Mr. Lloyd testified that his business was not in compliance with the Act because of a mistake made by his insurance agent. Mr. Lloyd and Ms. Couch believed that the business's general insurance policy included workers' compensation coverage and did not find out until they called to report plaintiff's injury that there was no coverage. As soon as Mr. Lloyd realized he had no coverage, he obtained a workers' compensation policy on June 6, 2006. The Commission finds that Mr. Lloyd is the person who had the ability and authority to bring his business into compliance with the Act and that he neglected to obtain workers' compensation insurance to cover his employees.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 30, 2006, an employment relationship existed between plaintiff and defendant-employer and the parties were subject to the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2.
2. On May 30, 2006, plaintiff sustained an injury by accident to the second finger on his left hand that arose out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2. *Page 8 
3. Plaintiff's average weekly wage is $334.26, yielding a compensation rate of $222.95. N.C. Gen. Stat. § 97-2.
4. Plaintiff is entitled to have defendants pay temporary total disability compensation at the rate of $222.95 per week from May 31, 2006 through June 12, 2006 and from June 20, 2006 through February 21, 2007, subject to a credit to defendant-employer for the $1,254.00 in unemployment benefits plaintiff received. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to have defendants pay for his 60% permanent partial impairment rating to the second finger on his left hand, which amounts to 24 weeks at $222.95 per week, or $5,350.80. N.C. Gen. Stat. § 97-31(3).
6. Plaintiff is entitled to have defendants pay for all medical expenses for reasonable and necessary medical care provided or to be provided as a result of plaintiff's May 30, 2006 injury by accident. N.C. Gen. Stat. §§ 97-25, 97-25.1.
7. Defendants failed to promptly pay benefits owed to plaintiff under the Workers' Compensation Act and, as such, are subject to a 10% penalty on all benefits due and owing to plaintiff. N.C. Gen. Stat. § 97-18(i).
8. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
9. Defendant-employer failed to purchase workers' compensation insurance as required by N.C. Gen. Stat. § 97-93 to cover its employees from May 30, 2006 through June 6, 2006. James Lloyd d/b/a Forest Hills Service Center had the ability and authority to bring his *Page 9 
business into compliance with N.C. Gen. Stat. § 97-93 and may be assessed a penalty equal to 100% of the amount of compensation due defendant's employees injured during the time his business failed to comply with N.C. Gen. Stat. § 97-93 as set out in N.C. Gen. Stat. § 97-94(d).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff accrued temporary total disability compensation at the rate of $222.95 per week, which amounts to $414.05 for the time period of May 31, 2006 through June 12, 2006 and $7,866.95 for the time period of June 20, 2006 through February 21, 2007. The amount that has accrued shall be paid in one lump sum directly to plaintiff, subject to a credit to defendant-employer for the $1,254.00 in unemployment benefits plaintiff received and subject to an attorney's fee awarded below.
2. Defendants shall pay plaintiff for his 60% permanent partial impairment rating to the second finger on his left hand, which amounts to 24 weeks at $222.95 per week or $5,350.80, subject to an attorney's fee awarded below.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his May 30, 2006 compensable injury by accident, that tend to effect a cure, give relief, or lessen the period of plaintiff's disability.
4. Defendants shall pay plaintiff a 10% penalty on the $7,027.00 in unpaid temporary total disability benefits owed to plaintiff, which amounts to a penalty of $702.70.
5. Defendants shall pay a reasonable attorney's fee of 25% of the accrued benefits awarded to plaintiff in paragraph 1 and 2 of this Award and the 10% penalty awarded to plaintiff *Page 10 
in paragraph 4. This amount shall be deducted from the amount owed plaintiff and shall be paid directly to plaintiff's attorney.
6. Plaintiff's counsel shall send a copy of this decision to all of plaintiff's healthcare providers. The healthcare providers with outstanding bills in this matter shall not seek to obtain collection of these bills from plaintiff. Collection should be directed to defendant James Lloyd d/b/a Forest Hills Service Center at 1317 University Dr., Durham, North Carolina 27707, which is the address listed for defendant-employer in the Industrial Commission file. Failure to comply with this Order by the healthcare providers and their collection agencies will result in the initiation of contempt proceedings against persons in violation of this Order.
7. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty of $50.00 per day is assessed against defendant James Lloyd d/b/a Forest Hills Service Center for failing to secure workers' compensation insurance from May 30, 2006 through June 6, 2006. This amounts to 8 days without proof of workers' compensation insurance. A check in the amount of $400.00 shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy C. Curtner at the Fraud Unit of the North Carolina Industrial Commission.
8. Pursuant to N.C. Gen. Stat. § 97-94(d), an additional penalty of any amount of 100% of the amount of the compensation due to plaintiff in this matter is assessed against defendant James Lloyd for failing to comply with N.C. Gen. Stat. § 97-93. A check in the amount of $41,131.09 (TTD-$7,027.00 + PPD-$5,350.80 + Meds-$28,753.29 = $41,131.09) shall be made payable to the North Carolina Industrial Commission and sent directly to Carolyn Wall, Accounting Clerk at the North Carolina Industrial Commission, 4340 Mail Service Center, Raleigh, North Carolina, 27699-4340. *Page 11 
9. Should the parties reach a settlement in this claim or if defendant-employer pays plaintiff the amounts due and owing, defendants may contact Commissioner Mavretic to discuss possible resolution of the penalties that have been assessed in this matter.
10. Defendants shall pay the costs.
This 19th day of June, 2008.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________
BERNADINE S. BALLANCE
COMMISSIONER
S/___________________
DIANNE C. SELLERS
 COMMISSIONER *Page 1